NOT DESIGNATED FOR PUBLICATION

No. 119,635

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES M. COCHRAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed August 9, 2019. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., STANDRIDGE, J., and NEIL B. FOTH, District Judge, assigned.

PER CURIAM: James M. Cochran appeals the district court's summary denial of his K.S.A. 2018 Supp. 21-2512 motion for postconviction DNA testing and his companion motion to inspect that DNA evidence. On appeal, Cochran argues he satisfied the statutory requirements that required the district court to order postconviction DNA testing. Finding no error by the district court, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On numerous occasions in December 2010, Cochran called an escort service in Wichita, Kansas, and requested the services of a prostitute. In response to Cochran's requests, Donald Davis brought K.P.—a 13-year-old child—to Cochran's house on three different occasions. Cochran had sexual intercourse with K.P. on each of these occasions. Specifically, K.P. reported Cochran had sexual intercourse with her on the 18th, 20th, and 24th of December 2010. On December 25, 2010, K.P. submitted to a sexual assault examination and swabs from her body were collected for future DNA comparisons. After his arrest, Cochran admitted to having sex with K.P. three times in December 2010 and paying her cash in exchange for sex.

The State charged Cochran with three counts of rape of a child under 14 years of age. Each count was charged as an off-grid person felony.

During discovery, the State moved for an order directing Cochran to provide a DNA sample. The State argued a DNA sample from Cochran was needed to compare his DNA to the DNA contained in the swabs collected from K.P. during her sexual assault examination. The district court granted the State's motion and ordered Cochran to provide a DNA sample.

DNA testing was performed on vaginal swabs obtained from K.P. The testing revealed a mixture of DNA from at least two individuals and consistent with the DNA from K.P. and Cochran. After Cochran received the DNA comparison results, he moved for a trial continuance to obtain an independent evaluation of the DNA results. The district court granted Cochran's requested continuance. The district court later authorized funding from the Board of Indigents' Defense Services (BIDS) for DNA testing.

Cochran ultimately entered into a plea agreement with the State. Under the plea agreement, the State agreed to recommend a departure to the sentencing grid under the Kansas Sentencing Guidelines Act (KSGA) in exchange for Cochran's plea of no contest to all three counts.

In accordance with the terms of the plea agreement, Cochran pled no contest to three counts of rape of a child under 14. Before the district court accepted Cochran's pleas, the State provided a factual basis. The State asserted that, had the case gone to trial, it intended to prove that Cochran had sexual intercourse with K.P. on three separate occasions. When the district court asked whether Cochran challenged or contested the State's factual basis, Cochran explained that he did not know K.P.'s age and would not have had sex with K.P. if he knew her age. The district court then engaged in a discussion with Cochran, which clarified that Cochran did not contest having sexual intercourse with K.P. three times:

"THE COURT:  Okay. You don't challenge the fact that the child was 13 years of age when you had intercourse with her?

"[COCHRAN:]  No.

"THE COURT:  And you don't challenge the fact, as set forth by [the State], that you knowingly committed an act of intercourse three different times as set forth in the Complaint/Information with this same person identified by the initials of [K.P.]?

"[COCHRAN:]  Correct."

Before sentencing, Cochran filed a motion for a downward durational departure. In that motion, Cochran first requested a departure to the KSGA sentencing grid for his three off-grid offenses. This was the departure contemplated by the plea agreement. Cochran, however, also requested an additional departure of one-half of the prison time in the mid-number of his KSGA grid sentence.

At the sentencing hearing, Cochran testified in support of his departure requests. Cochran explained that K.P. was brought to his house by an escort service. On the first visit to his home, Cochran asked K.P. about her age. Cochran said K.P. told him that she was at least 18 years old. Cochran said he believed K.P. was at least 18 years old and was "flabbergasted" when he found out she was only 13. On cross-examination, however, Cochran again admitted that he had sexual intercourse with K.P. three times:

"Q.   . . . Mr. Davis, the pimp, brought you the girl at issue in this case, correct?

"A.   Yes.

"Q.   On three separate occasions?

"A.   That's correct.

"Q.   And on each of those three occasions, you paid money to have sex with her; is that correct?

"A.   Yes, ma'am."

Following the parties' arguments, the district court granted Cochran's request to depart to the KSGA sentencing grid on all three counts. However, the district court denied Cochran's request to depart to one-half of the middle number in the sentencing grid. Ultimately, the district court sentenced Cochran to 332 months in prison. Cochran filed a direct criminal appeal.

In his direct criminal appeal, Cochran argued the district court abused its discretion by not departing to one-half of his KSGA sentence, violated his right to a speedy trial, failed to apply the identical offense doctrine, and violated his constitutional rights—as recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)—by improperly using his criminal history. This court affirmed Cochran's convictions and sentence. *State v. Cochran*, No. 110,019, 2014 WL 4080162 (Kan. App. 2014) (unpublished opinion).

In July 2016, Cochran filed a postconviction motion for DNA retesting and a motion to inspect DNA evidence. The district court held a nonevidentiary hearing to consider Cochran's DNA motions. After hearing the parties' arguments, the district court denied Cochran's motions, finding that DNA testing would not produce any exculpatory evidence indicating he was wrongfully convicted. In denying the motions, the district court found that Cochran previously conducted DNA testing on the biological material. Further, the district court noted that Cochran never denied having sex with K.P. and DNA testing would produce no evidence relevant to his claim that he was unaware that she was 13 years old.

ANALYSIS

Cochran contends the district court erred by denying his K.S.A. 21-2512 postconviction motion for DNA retesting and the companion motion to inspect that DNA evidence. Cochran argues that K.S.A. 2018 Supp. 21-2512 permits a "'fishing expedition' for DNA evidence" and claims he satisfied the statutory criteria required to mandate postconviction DNA testing.

The summary denial of a K.S.A. 2018 Supp. 21-2512 motion for DNA testing presents a question of law over which we exercise unlimited review. *State v. Hernandez*, 303 Kan. 609, 613, 366 P.3d 200 (2016).

Postconviction DNA testing is governed by K.S.A. 2018 Supp. 21-2512, which provides:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for . . . rape . . . may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:
(1) Is related to the investigation or prosecution that resulted in the conviction;
(2) is in the actual or constructive possession of the state; and

5

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

. . . .

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced."

Under the language of K.S.A. 2018 Supp. 21-2512, the district court must determine whether the biological material sought to be tested qualifies for testing under K.S.A. 2018 Supp. 21-2512(a)(1)-(3). If the biological material qualifies for DNA testing, the district court must then determine whether testing may produce noncumulative, exculpatory evidence relevant to the petitioner's claim of wrongful conviction or sentencing. *State v. Lackey*, 295 Kan. 816, 820-21, 286 P.3d 859 (2012).

The district court did not err by denying Cochran's postconviction DNA motions because the biological material did not qualify for testing under K.S.A. 2018 Supp. 21-2512(a).

To qualify for DNA testing, K.S.A. 2018 Supp. 21-2512(a)(3) requires that either (1) the biological material has not been previously tested or (2) the material could be retested with new and improved techniques. *Lackey*, 295 Kan. at 821-22. The biological material has previously been subjected to DNA testing. The prior tests revealed that the DNA discovered on K.P.'s vaginal swabs was consistent with that belonging to Cochran. After Cochran was notified of the DNA test results, the district court granted Cochran's request to continue the trial so Cochran could have an independent DNA evaluation of the biological material. In fact, the district court authorized funding from BIDS so that Cochran could retain an expert to conduct an independent evaluation of the biological

6

material. In his current request for testing, Cochran seeks to have the exact same biological material retested; he does not request DNA testing of different material.

Because Cochran requests only retesting, he must explain that some new DNA technique could provide "'a reasonable likelihood of more accurate and probative results.'" *Wimbley v. State*, 292 Kan. 796, 812, 275 P.3d 35 (2011). But Cochran fails to argue that new techniques are available which could improve on the original testing. Cochran thus fails to show the biological material satisfies the requirements of K.S.A. 2018 Supp. 21-2512(a)(3) to obtain DNA testing. See *Lackey*, 295 Kan. at 822; *Wimbley*, 292 Kan. at 812. Accordingly, the district court did not err by denying Cochran's postconviction motions for DNA retesting and inspection.

And even if the biological material qualified for testing under K.S.A. 2018 Supp. 21-2512(a), the district court did not err because DNA testing would not lead to exculpatory evidence relevant to Cochran's claim of wrongful conviction or sentencing.

Assuming the biological material qualified for DNA testing, K.S.A. 2018 Supp. 21-2512(c) required the district court to order DNA testing if "testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." But DNA testing is not required if the "files and records available to the district court demonstrate conclusively that such testing could not lead to exculpatory evidence." *State v. Smith*, 34 Kan. App. 2d 368, 373, 119 P.3d 679 (2005).

As the petitioner, Cochran was not required to make specific assertions about how the requested DNA testing would produce noncumulative, exculpatory evidence. Instead, the "district court is charged with the responsibility of assessing the exculpatory and cumulative nature of each item proposed to be tested." *Lackey*, 295 Kan. at 824.

7

Evidence is exculpatory when it "'tends to disprove a fact in issue which is material to guilt or punishment.'" *Hernandez*, 303 Kan. at 617 (quoting *Lackey*, 295 Kan. at 823). Evidence need not be exonerating to be exculpatory. Instead, the evidence need only *tend* to establish the petitioner's innocence of the crime. *State v. Johnson*, 299 Kan. 890, 894, 327 P.3d 421 (2014). And the Kansas Supreme Court has explicitly "rejected the notion of defining exculpatory evidence under K.S.A. 21-2512(c) as being a function of weighing evidence." *Lackey*, 295 Kan. at 823.

With these principles in mind, we note that "'DNA testing is intended to confirm or dispute the identity of individuals involved in or at the scene of a purported crime.'" *Johnson*, 299 Kan. at 894 (quoting *Smith*, 34 Kan. App. 2d at 373). As the district court recognized, Cochran has always admitted that he had sexual intercourse with K.P. on three occasions. Any DNA evidence obtained from retesting would not tend to disprove a fact in issue because Cochran's involvement in the crimes has never been at issue. See 299 Kan. at 894.

The facts in this case are analogous to those in *Smith*, where this court stated:

> "Here, the fact that Smith engaged in intercourse and oral sodomy with the victim in this case *has never been in dispute*. We fail to comprehend any possibility that DNA testing could assist in supporting a defense of consensual conduct or otherwise exculpate Smith. Accordingly, the district court did not err in its determination that testing should be denied." 34 Kan. App. 2d at 373-74.

As in *Smith*, the fact that Cochran engaged in intercourse with a 13-year-old child has never been in dispute. So any DNA evidence obtained from retesting would not exculpate Cochran from his guilt of committing three counts of rape of a child under 14. See *Johnson*, 299 Kan. at 894.

Because the biological material failed to qualify for DNA testing and such testing could not produce exculpatory evidence impacting Cochran's convictions or sentence, we conclude the district court properly denied his postconviction DNA motions.

Affirmed.