NOT DESIGNATED FOR PUBLICATION

No. 126,691

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL PATRICK BALDERES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; DANIEL D. GILLIGAN, judge. Submitted without oral argument. Opinion filed September 19, 2025. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Jamie L. Karasek*, assistant district attorney, *Thomas Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., COBLE and BOLTON FLEMING, JJ.

PER CURIAM: Daniel Patrick Balderes pleaded guilty to drug-related charges, and the district court sentenced him to 49 months in prison, suspending the execution of the sentence for 18 months of probation. Less than a year later, the State sought to revoke Balderes' probation, and he stipulated that he violated the terms of his probation by failing to report and failing to meet his parole obligations. The district court revoked his probation based on the stipulated facts, finding in part that Balderes absconded. Balderes appeals the revocation of his probation arguing that the district court erred as a matter of law by relying on two unavailable exceptions to bypass the graduated sanctions required

1

by K.S.A. 2016 Supp. 22-3716. On our review of the record, we find no abuse of discretion and affirm the district court's decision to revoke Balderes' probation.

FACTUAL AND PROCEDURAL BACKGROUND

Following his June 2017 arrest and resulting drug charges, Balderes pleaded guilty to two counts of drug possession in Reno County District Court. In exchange, the State agreed to dismiss the remaining charges. Balderes sought a dispositional departure sentence, asking the court to grant him probation. The district court ultimately sentenced Balderes to 49 months in prison but suspended the execution of the sentence and awarded him 18 months of probation.

In July 2022, the State asked the court to revoke Balderes' probation, claiming that he failed to report as directed for more than two months, was missing after failing to surrender on a "State Parole A&D [arrest and detain]" after agreeing to do so, and his whereabouts were unknown at that time. Three months later, in October 2022, Balderes was arrested in Wichita on two open warrants. Following his arrest, the State amended its motion to revoke Balderes' probation, adding a third allegation that Balderes engaged in an illegal activity by possessing marijuana and unlawful narcotics based on his October 2022 arrest, citing the new Wichita criminal case. Balderes was released on bond.

In November, the district court issued a bench warrant for Balderes' arrest after he failed to appear in court. In January 2023, Balderes was arrested. Balderes again posted bond, then did not appear at his next hearing on the probation violation. The district court issued another warrant for his arrest.

About a week later, on February 13, 2023, Balderes was arrested again. Following this arrest, the State amended its motion to revoke Balderes' probation a second time,

adding a fourth allegation that Balderes engaged in an illegal activity by committing domestic battery, citing the new Wichita criminal case.

The district court convened Balderes' probation revocation hearing on July 6, 2023. Balderes waived his right to an evidentiary hearing on allegations one and two of the motion for probation violation—failing to report and failing to turn himself in—and stipulated to them as being true. The State proceeded with allegations one, two, and three from its amended motion to revoke Balderes' probation and withdrew allegation four, engaging in an illegal activity by committing domestic battery.

The district court heard testimony from the State's witness and found Balderes in violation of allegations one and two based on Balderes' stipulation. Finding the State failed to meet its burden of proof on allegation three, the court proceeded to disposition.

The State recommended that the district court revoke Balderes' probation and impose the underlying sentence. The State argued that Balderes showed an "absolute lack of contact," failed to report to his probation officer, and failed to appear for court hearings twice. The prosecutor noted that "there [was] no indication whatsoever that he has addressed any substance abuse issues in his case which would be absolutely routine in a drug case, let alone a drug distribution case." Asserting that Balderes' continued failures, despite receiving a departure sentence, showed no indication that he would benefit from remaining on probation, the State recommended revocation.

Balderes' counsel argued that although he did miss some reporting dates and failed to follow through with surrendering on his state warrant, Balderes had followed through with requirements since. Balderes' counsel also argued that he had completed his SACK (Substance Abuse Center of Kansas) evaluation, gone into recovery treatment, been living in a sober environment, and obtained a full-time job. Balderes' counsel asked the court to give him another chance and not send him to prison.

3

The district court also permitted Balderes to speak. Balderes said he was trying to get his life together and attempting to redeem himself and wanted to do things differently so he could put himself on the right track. He admitted that he had gone "into hiding" after an incident with a former gang member but reiterated that he was now complying with all probation requirements.

The district court noted that Balderes had not been meeting the obligations for community corrections or parole. Given his lack of contact with his supervising entities, Balderes absconded and continuously failed to report. After confirming that the probation officer had no contact with Balderes from May 19, 2022, until February 2023, and reminding Balderes that his probation was an act of grace resulting from a departure sentence, the district court revoked Balderes' probation and imposed the underlying sentence of 49 months in prison. In its journal entry of probation violation hearing, the district court recorded as the bases for the revocation that Balderes absconded, failed to report as directed, failed to turn himself in for parole violation, and his whereabouts had been unknown, as stipulated during the hearing.

Balderes timely appeals.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REVOKING BALDERES' PROBATION

Balderes argues that the district court erred, as a matter of law, by revoking his probation without imposing intermediate sanctions. He claims the district court lacked the legal basis to revoke his probation for two reasons: (1) The district court potentially relied on the dispositional departure exception to the intermediate sanctioning scheme, which does not apply to him, and (2) the prosecution did not allege Balderes absconded, and there was no evidence to support the district court's finding that he absconded.

4

*Applicable legal standards*

The initial decision to impose probation is an act of grace, but once a defendant receives the privilege of probation, the defendant has a conditional liberty interest in remaining on probation, which is subject to substantive and procedural due process. This means that once probation is imposed, it may only be revoked if a determination is made that the defendant failed to comply with conditions of probation. *State v. Hurley*, 303 Kan. 575, 581, 363 P.3d 1095 (2016). The decision to revoke probation involves two steps: (1) a factual determination that the probationer violated a condition of probation; and (2) a discretionary determination of the appropriate disposition in light of the proved violations, and revocation is merely one of the available dispositions under state law. *State v. Horton*, 308 Kan. 757, 760-61, 423 P.3d 548 (2018).

The statute that lays out the potential dispositions, K.S.A. 2016 Supp. 22-3716, includes an intermediate sanctions scheme. This law generally requires, with specific exceptions, that the district court impose intermediate sanctions before ordering the defendant to serve the underlying sentence. *State v. Brown*, 51 Kan. App. 2d 876, 880, 357 P.3d 296 (2015). But once a probation violation and an exception to the intermediate sanctions requirement are established, the district court has discretion in determining whether to continue the probation or to revoke and require the defendant to serve the underlying prison sentence. 51 Kan. App. 2d at 879-80; see K.S.A. 2016 Supp. 22-3716.

A district court's decision to revoke probation by not following the intermediate sanction framework or bypass procedure set out in the applicable version of K.S.A. 22-3716 is reviewed under an abuse of discretion standard. *State v. Wilson*, 314 Kan. 517, 520, 501 P.3d 885 (2022). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). The party

asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

The State must establish that the probationer violated the terms of probation by a preponderance of the evidence—or that the violation is more probably true than not true. *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). And appellate courts review the district court's factual findings that a violation occurred for substantial competent evidence. *State v. Lyon*, 58 Kan. App. 2d 474, 478, 471 P.3d 716 (2020).

*Preservation*

Before proceeding to the merits of the issue, this court must first address the State's contention that Balderes' appeal was not properly preserved for this court's review. The State argues Balderes raises this issue for the first time on appeal because he did not specifically ask the district court to impose any intermediate sanctions, which is what he is now seeking on appeal. According to the State, Balderes only asked the district court to give him another chance to stay out of prison. The State contends that Balderes is disputing factual questions regarding the district court's finding that he absconded, so he cannot raise the issue for the first time on appeal, nor did he explain why this court should address these issues for the first time on appeal as required under Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36).

Balderes reasons that the issues are properly preserved for appeal because he asked the court to continue his probation at the violation hearing. He also claims that the district court applied the wrong version of the statute—regarding the dispositional departure exception to the intermediate sanctioning scheme—which is a question of law and, as a result, is properly reviewed on appeal.

We must agree with Balderes, as we do not construe his arguments so narrowly. Our Supreme Court has held that if a party's arguments presented to the district court were of sufficient breadth to include their appellate arguments, the arguments should be considered. *State v. Johnson*, 299 Kan. 890, 892-93, 327 P.3d 421 (2014) (concluding arguments broad enough to encompass appellate arguments, even if they are ambiguous, are properly before appellate court's review); see also *State v. Collins*, 320 Kan. 211, 219, 564 P.3d 393 (2025) (refusing to pigeonhole the question of preservation so as to form a much higher barrier to appellate review).

Balderes' counsel implored the district court "to not send him to prison at this time and to give him another chance." A reasonable interpretation of this statement supports a claim that Balderes sought intermediate sanctions. Once the district court finds a probation violation, although the district court has discretion to continue or modify probation, revocation is not allowed unless the court first imposes intermediate sanctions—except where an exception to the intermediate sanctions scheme applies. It goes without saying that to remain on probation, Balderes was seeking some type of intermediate sanction as set out in K.S.A. 2016 Supp. 22-3716(c) in lieu of revocation. By asking for another chance at probation rather than going to prison, we may infer that Balderes was asking the district court to apply any other options available to the court other than revocation.

Balderes now asks us to reverse the district court and remand with instructions to impose sanctions instead of revoking his probation. His arguments to the district court were of sufficient breadth to include his appellate arguments. See *Johnson*, 299 Kan. at 892-93. Accordingly, this issue was "raised and ruled on" before the district court and was properly preserved for appeal. Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36); *State v. McRoberts*, 65 Kan. App. 2d. 481, 486, 567 P.3d 905 (2025). We continue to address the merits of Balderes' claims.

7

*The district court did not rely upon the dispositional departure exception.*

Balderes first argues that the district court erred by relying on the departure exception to the intermediate sanctioning scheme of the probation statute, under K.S.A. 22-3716. Balderes claims because he committed the crime of his conviction in June 2017, the 2016 version of K.S.A. 22-3716 should apply. This version of the probation violation statute did not include the departure sentence exception to the sanctioning scheme.

The State agrees that the 2016 version of the probation statute applies. But the State contends that the district court did not rely on the inapplicable departure exception when it revoked Balderes' probation.

Balderes does not argue the district court's decision was based on an error of fact or that it was unreasonable. We then review whether the district court erred by applying the incorrect law. *Younger*, 320 Kan. 137-38. Again, as the party asserting the district court abused its discretion, Balderes bears the burden to such show abuse of discretion. *Peters*, 319 Kan. at 497-98.

The exceptions to the intermediate sanctioning schemes are prescribed under K.S.A. 22-3716(c). In the current version of the statute, a court may revoke probation without having previously imposed a sanction in four situations, one of which includes if the offender received probation as the result of a dispositional departure. K.S.A. 22-3716(c)(7)(B). This exception was first introduced in the 2017 amendments. See K.S.A. 2017 Supp. 22-3716(c)(9)(B). But this dispositional departure exception only applies to offenders who committed the crime of conviction on or after July 1, 2017. See L. 2017, ch. 92, § 8; *State v. Coleman*, 311 Kan. 332, 334-37, 460 P.3d 828 (2020).

The date Balderes committed the crime of conviction was June 23, 2017, merely a week before the 2017 amendments of the probation statutes took effect. So, the parties

8

are correct that the 2016 version of the statute is controlling, and the dispositional departure exception was not a viable option for the district court to utilize when revoking Balderes' probation.

But our review of the record shows the district court did not specifically rely on this exception in its decision. During arguments at the probation violation hearing, the State argued, in part, that the court had the authority to revoke Balderes' probation because his probation was granted as a result of a departure sentence. The district court, on the other hand, did not specifically pronounce that the dispositional departure sentence was one of the bases for the revocation of Balderes' probation. The court announced that its decision to revoke Balderes' probation was based on his stipulation to allegations one and two of the revocation motion. His stipulation to those allegations established that he violated the terms of his probation. The court further concluded that its decision to impose the underlying sentence was based on Balderes absconding from supervision by failing to meet his obligations to report. The court noted there was "absolutely nothing we can do for you if you're not reporting for us." This was also reflected in the court's journal entry, which does not mention the dispositional departure sentence being the reason for the probation revocation.

It is true that the district court reminded Balderes twice that his probation was awarded as a result of a dispositional departure during the probation revocation hearing. The first time the district court mentioned dispositional departure was to confirm the State's recitation of Balderes' sentencing:  "So when the [S]tate says that you received *an act of grace* by the court for giving you a dispositional departure based on the fact that you're a criminal history category A and you had received person felony convictions after this case was filed the [S]tate's absolutely right." (Emphasis added.) The district judge then mentions the departure sentence again after announcing it was revoking Balderes' probation:

9

"For purposes of today though, again, the court has found that you violated allegations 1 and 2. I've revoked your assignment to community corrections. There was a departure granted when you were initially given *the grace* of community corrections. The court's revoking the community corrections and executing your underlying sentence." (Emphasis added.)

On a review of the record, we find the context in which the district court mentioned the departure sentence was not to rely upon the departure as a legal basis for revocation, but instead to remind and admonish Balderes for forfeiting the leniency shown by the court. This is demonstrated by the district court's repeated use of the word "grace."

The record simply lacks the showing that the district court based its decision to revoke Balderes' probation on the departure exception. The party alleging an error occurred has the burden of designating a record that establishes the claimed error. *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021); see also Supreme Court Rule 6.02(a)(4), (a)(5) (appellant has the burden to furnish a sufficient record to support the claims of error; appellant's claims of error must be supported with specific citations to the record on appeal). Without such a record, an appellate court presumes the district court's action was proper. *State v. Valladarez*, 288 Kan. 671, 686, 206 P.3d 879 (2009).

Balderes fails to show that the district court applied the dispositional departure exception to the intermediate sanctioning scheme, which was unavailable in the 2016 version of the statute. Accordingly, the district court did not err by applying the incorrect version of the probation statute.

*Substantial competent evidence supported that Balderes absconded.*

Balderes next argues that the district court erred by revoking his probation based on the finding he absconded. He contends that the State never alleged he absconded and that the State presented no evidence to show that he absconded.

The State responds that there is no requirement for the State to specifically allege that Balderes absconded in order for the district court to revoke his probation under that exception. The State maintains there was sufficient evidence to support the allegation Balderes absconded from supervision and that the district court did not abuse its discretion by bypassing intermediate sanctions under the exception for absconding.

As discussed above, the 2016 version of the probation statute controls. K.S.A. 2016 Supp. 22-3716(c)(8)(B) states that the district court may revoke probation if the offender absconds from supervision while on probation. The district court must make a finding that the probationer absconded from supervision. *State v. Dooley*, 313 Kan. 815, 819, 491 P.3d 1250 (2021).

Appellate courts apply a bifurcated standard of review when reviewing whether a statutory exception for absconding applies. 313 Kan. at 819. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). Considering whether the evidence supported a determination that the probationer absconded is a mixed question of fact and law. If factual findings are disputed, the appellate court applies a substantial competent evidence standard while disregarding conflicting evidence or other inferences that might be drawn from the evidence. The conclusions of law based on those findings are subject to unlimited review. *Dooley*, 313 Kan. at 819.

11

"Substantial competent evidence does not require evidence to *prove* a fact; rather, it simply requires evidence to sufficiently *support* the fact-finder's conclusion." *State v. Morley*, 312 Kan. 702, 712, 479 P.3d 928 (2021). When reviewing a district court's factual findings, we do not reweigh the evidence or reassess credibility of witnesses. 312 Kan. at 713.

Balderes relies on this court's holding in *State v. Huckey*, 51 Kan. App. 2d 451, 348 P.3d 997 (2015), to support his argument that the State failed to show he absconded. In *Huckey*, the district court found Huckey absconded based on the State's oral allegation that he failed to report for more than two months, without making any further inquiry as to whether Huckey fled or hid himself, or deliberately acted to avoid arrest, prosecution, or service of process. But our court held that the State must show more than just failing to report and must prove by a preponderance of the evidence that the probationer absconded, and reversed the district court's ruling. 51 Kan. App. 2d at 457-58.

Despite Balderes' reliance on *Huckey*'s reasoning, the facts of his case are distinct from *Huckey*. Although like in *Huckey*, Balderes stipulated to the State's allegations that he violated the terms of his probation, here the State did more than merely comment that he failed to report for more than two months. The State alleged through its motions and evidence at hearing that the last time Balderes reported was in May 2022 and he failed to report until February 2023, when his supervisor reached him by contacting his boss. The State also articulated in its motions that Balderes failed to turn himself in following an arrest and detain order for failing to report on his separate parole. Although the State did not specifically use the word "absconded" in either its motions to revoke or during the probation revocation hearing, it must only include sufficient information in its motions to put the probationer on notice that it claims he has absconded. When viewed together, the State's allegations that Balderes failed to report or appear, and that his "whereabouts were unknown at [that] time," were sufficient to place Balderes on notice that the State believed he had absconded from probation.

12

Balderes stipulated to two violations of his probation and waived his right to an evidentiary hearing on those allegations. And Balderes himself admitted that, for various personal reasons, he had "pretty much . . . went into hiding." Unlike the circumstances in *Huckey*, the district court here had more evidence before it than a mere statement that the probationer failed to report for two months.

Balderes also fails to recognize that our Supreme Court has adopted a more comprehensive definition of absconding since *Huckey*. In *Dooley*, the court emphasized that absconding means the probationer "'engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process,'" or that "'a pattern of violations permits the inference that the defendant is intentionally evading the legal process.'" 313 Kan. at 820-21. And again, not only did Balderes stipulate to his failures to appear, but he also admitted hiding—precisely in line with the rationale in *Dooley*.

The evidence presented at the probation violation hearing sufficiently shows that Balderes' conduct demonstrated a pattern of violation and that he intentionally evaded legal processes. He avoided the legal processes of reporting to his probation supervisor, turning himself in for the parole violations, and appearing for his probation violation hearings. Balderes missed at least two court hearings during the period he avoided his supervisor's contact. The district court further commented that this was not Balderes' first rodeo, stating that his criminal history was A, so Balderes should know exactly what he was supposed to do, but he consciously made the decision not to carry out both his parole and probation obligations.

Based on the reasons above, the State's motions sufficiently provided notice to Balderes that the State would seek to revoke his probation because he absconded, and substantial competent evidence supported the district court's finding that Balderes absconded. As a result, the district court properly applied the statutory exception for

13

absconding under K.S.A. 2016 Supp. 22-3716(c)(8)(B) to revoke Balderes' probation without imposing prior sanctions.

For the preceding reasons, it was well within the district court's discretion to revoke Balderes' probation and impose his underlying sentence.

Affirmed.